AO 91 (Rev. 11/11) Criminal Complaint

AUSA Andrea L. Campbell (312) 353-5323

FILED
6/25/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

FRANCISCO GARCIA, JR.

CASE NUMBER: 26 CR 333

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about March 18, 2026, at Forest Park, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally distributed a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

Digitally signed by
Antonio Vazquez
Date: 2026.06.25
12:40:56 -05'00'

ANTONIO VAZQUEZ
Task Force Officer, Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 25, 2026

_Judge's signature_

City and state: Chicago, Illinois

GABRIEL A. FUENTES, U.S. Magistrate Judge
_Printed name and title_

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, ANTONIO VAZQUEZ, being first duly sworn, state as follows:

1.      I am a Task Force Officer ("TFO") with Homeland Security Investigations ("HSI") and have been so employed since approximately October 2021. I am currently assigned to HSI Chicago, Financial Crimes Task Force, and my responsibilities include the investigation of money laundering and narcotics trafficking offenses, including, but not limited to, violations of Title 18, United States Code, Sections 1956, 1957, and 1960 and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

2.      This affidavit is submitted in support of a criminal complaint alleging that FRANCISCO GARCIA, JR knowingly and intentionally distributed a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GARCIA with distribution of a controlled substance, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I

believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. The information set forth in this Affidavit is based on my personal knowledge; information provided by other law enforcement officers and governmental agencies, and others with knowledge of the events described below; and information obtained from public records and computer database searches.

## FACTS SUPPORTING PROBABLE CAUSE

### A. Summary of Probable Cause

4. As discussed more fully below, in or around March 2026, an undercover agent ("UC-1") had communications with Mexico-based individuals (Individuals A and B) to set up narcotics transactions in Chicago and Forest Park, Illinois. FRANCISCO GARCIA, JR. ("GARCIA") then distributed the narcotics— approximately 1.2 kilograms of cocaine on March 5, 2026, and approximately 1 kilogram of cocaine on March 18, 2026—to another undercover agent ("UC-2").

### B. GARCIA Delivers Approximately 1.2 Kilograms of Cocaine on March 5, 2026.

5. In approximately November 2023, HSI began investigating a transnational criminal organization ("TCO") associated with Individual A, a deceased Mexico-based drug trafficker who coordinated the transportation of

2

narcotics and U.S. currency through and within the United States. The investigation included recorded communications between law enforcement and Individual A.

6.      For example, on or about March 3, 2026, UC-1 had a recorded WhatsApp phone call with Individual A, who was using Individual A Phone.[1] During the call, UC-1 stated that the "person [alleged customer]" they had talked about previously was interested in the "part [kilogram of cocaine]."[2]  Individual A stated he was going to call "the guy [Individual B]." Individual A then asked, "1 or 2 [one or two kilograms of cocaine]" so that he could tell "him [Individual B]," and UC-1 replied "1 [kilogram of cocaine]."  Individual A subsequently requested that UC-1 send a phone number

---

[1] Individual A has been identified as the user of the "Individual A Phone" based on recorded WhatsApp video calls between Individual A and a cooperating source. UC-1 and I compared a photo of Individual A from a law enforcement database to Individual A's image on recorded WhatsApp video calls and confirmed it was the same person. UC-1 compared the voice from the recorded WhatsApp video calls between Individual A and a cooperating source and confirmed that UC-1 was speaking to the same person the cooperating source had spoken to. Additionally, on or about December 9, 2025, UC-1 met in person with Individual A in Mexico City and confirmed Individual A's identity.

[2] Consensually recorded WhatsApp messages and phone calls ("recorded conversations") have been summarized in this affidavit. The recorded conversations involving Individual A, Individual B, and UC-1 are all in Spanish. The summaries of the recorded conversations involving Individual A, Individual B, and UC-1 in this affidavit, are based upon a preliminary review and preliminary translations of the recorded conversations performed by HSI agents involved in the investigation, who are fluent in Spanish, and do not reflect summaries from certified translated transcripts of the recorded conversations. The times listed for the recorded conversations are approximate. The summaries do not include all statements or topics covered during the recorded conversations. At various points in the affidavit, I have included my interpretation of words and phrases used in the recorded conversations. My interpretations are based on conversations with and information I received from UC-1 my knowledge of the investigation, my training and experience in narcotics and money laundering investigations, and the training and experience of other law enforcement agents with whom I have consulted.

so that UC-1 could be contacted by Individual B and/or Individual B's associates, to which the code phrase as "El Guero" was agreed to.

7. On or about March 3, 2026, at approximately 9:18 a.m., UC-1 received two incoming iMessages from Individual B, who was using Individual B Phone. The incoming iMessages from Individual B, which were preserved, stated, "Good day" and "With El Guero. I'm calling about an appointment [narcotics transaction] for today." At approximately 9:41 a.m., UC-1 made a recorded WhatsApp call to the Individual B, using Individual B Phone. During the call, Individual B and UC-1 agreed to conduct a narcotics transaction. UC-1 further agreed to contact Individual A to confirm the transaction, to which Individual B stated "Ah, perfect."

8. At approximately 7:27 p.m., UC-1 received an unrecorded incoming WhatsApp message from Individual B using Individual B Phone requesting approximate location information for the upcoming narcotics transaction.

9. On or about March 5, 2026, UC-1 and Individual B, using Individual B Phone, engaged in numerous unrecorded WhatsApp communications. During these communications, Individual B and UC-1 agreed to the location of a hotel located on the 6600 block of S. Cicero Avenue in Chicago, for the narcotics transaction. Individual B stated his associate would meet with UC-1's courier (UC-2), for the narcotics transaction.

10. At approximately 12:00 p.m., UC-2 arrived at the predetermined meeting location. At approximately 12:10 p.m., UC-1 relayed to Individual B via

4

WhatsApp that UC-2 "was there [the hotel]" and was driving a white Chevrolet Traverse.

11. At approximately 12:25 p.m., law enforcement observed GARCIA exit Subject Vehicle 1[34] in the hotel parking lot carrying a white and black gift bag. GARCIA walked to UC-2's vehicle. The meeting was audio and visually recorded. According to UC-2 and the recording of the meeting[5]:

a. Once GARCIA entered UC-2's vehicle, greetings were exchanged and GARCIA simultaneously handed over the gift bag, which contained a brick-shaped package.

b. GARCIA asked if UC-2 was tendering "15 1/2 [$15,500]" to which UC-2 stated the agreement was for "15 flat [$15,000]." GARCIA stated he had to make

---

[3] Subject Vehicle 1 is a black Chevrolet Silverado bearing Oklahoma registration. The vehicle is registered to Individual C at an address in Tulsa, Oklahoma.

[4] Subject Vehicle 1 was followed back to a residence on W. McLean Avenue., Chicago IL, by investigators. An Illinois Secretary of State driver's license photo of GARCIA was later presented to UC-2. UC-2 positively identified GARCIA as the driver of Subject Vehicle 1 and the individual who presented him/her with a kilogram of cocaine, as discussed below. Additionally, UC-2 observed GARCIA with a tattoo above his left eye reading "ARIA", and a separate tattoo reading "FAITH" on GARCIA's neck. A recent arrest photo of GARCIA captured both noted tattoos.

[5] The recorded meetings between UC-2 and GARCIA have been summarized in this affidavit. The recorded conversations UC-2 and GARCIA are all in Spanish. The summaries of the recorded conversations in this affidavit, are based upon a preliminary review and preliminary translations of the recorded conversations performed by HSI agents involved in the investigation, who are fluent in Spanish, and do not reflect summaries from certified translated transcripts of the recorded conversations. The times listed for the recorded conversations are approximate. The summaries do not include all statements or topics covered during the recorded conversations. At various points in the affidavit, I have included my interpretation of words and phrases used in the recorded conversations. My interpretations are based on conversations with and information I received from UC-2 my knowledge of the investigation, my training and experience in narcotics and money laundering investigations, and the training and experience of other law enforcement agents with whom I have consulted.

5

a phone call to confirm as he had just been shorted a couple of days earlier. GARCIA placed an outgoing phone call to an unknown person and relayed the discrepancy to an unknown male subject. The person on the other line ended the call and within minutes called back to confirm the amount of $15,000.

c. When UC-2 mentioned that his line of work was primarily picking up the money [money laundering], GARCIA stated, "yeah, but they really need the money right now."

d. GARCIA requested UC-2 to place the $15,000 narcotics payment in the gift bag he brought to avoid suspicion. UC-2 moved the $15,000 payment to the black and white gift bag, and GARCIA exited UC-2's vehicle, returning to Subject Vehicle 1.

12. Following the meeting, UC-2 met with HSI investigators at a pre-determined location and inspected the package provided by GARCIA. The package contained a substance wrapped in saran wrap that weighed approximately 1.2 kilograms and field tested positive for cocaine.

26. Following the narcotics transaction, HSI investigators maintained surveillance on Subject Vehicle 1 and observed GARCIA drive Subject Vehicle 1 from the location of the narcotics transaction to an address on W. McLean Avenue ("W. McLean Avenue Address") in Chicago. While driving to the noted address, GARCIA drove Subject Vehicle 1 in an indirect route and continuously drove under, then over the posted speed limit, disregarding traffic control signals on two separate occasions. Based on my training and experience, I believe this maneuver was a surveillance

6

detection technique, which is employed by narcotics traffickers and money launderers to evade law enforcement.

**C.  GARCIA Delivers Approximately One Kilogram of Cocaine on March 18, 2026.**

27.  On or about March 17, 2026, UC-1 communicated with Individual A, using Individual A Phone, via recorded WhatsApp call. During the communications, UC-1 stated, "That guy [UC-2] from the other day of that part [the kilogram of cocaine purchased on March 5, 2026] is interested in another." Individual A responded by stating that Individual B could have "it" [the kilogram of cocaine] delivered, along with some "papers [bulk U.S. currency for a money drop]." Individual A suggested that UC-1 could add the cost of the "that" [the kilogram of cocaine] to the "papers" [money pick-up] and send the total funds through cryptocurrency.

28.  On or about the same day, Individual B, using Individual B Phone, communicated with UC-1 via a series of recorded WhatsApp messages and recorded WhatsApp calls. During the communications, Individual B and UC-1 confirmed the narcotics transaction would occur the following day on March 18, 2026.

29.  On or about March 18, 2026, UC-1 communicated with Individual B, using Individual B Phone, via recorded WhatsApp messages. During the communications, UC-1 and Individual B coordinated another transaction for narcotics and $30,000 of bulk U.S. currency to take place at a parking lot located on the 1300 block of Des Plaines Ave., in Forest Park, Illinois.

30.     At approximately 4:40 p.m., law enforcement observed Subject Vehicle 2 enter the garage at the W. McLean Avenue Residence, with the garage door closing behind the vehicle.[6] At approximately 5:30 p.m., law enforcement observed GARCIA drive Subject Vehicle 2 out of the garage and followed GARCIA as GARCIA drove directly to the predetermined meet location for the narcotics and money transaction.

31.     At approximately 5:50 p.m., UC-2 arrived at the predetermined meeting location. Shortly thereafter, UC-1 relayed UC-2's location and vehicle information to Individual B via a recorded WhatsApp messages. At approximately 6:03 p.m., law enforcement observed GARCIA arrive at the parking lot meeting location and exit Subject Vehicle 2 carrying a small grey backpack. GARCIA walked to, entered, and sat in the front passenger seat in UC-2's vehicle. The meeting was audio and visually recorded. According to UC-2 and the recording of the meeting:

a.     Once inside, GARCIA confirmed the "number [token]" and then stated the bag contained $28,000 and a "piece [kilogram]."

b.     Inside the bag, UC-2 observed a heat-sealed package of U.S. currency, and a white brick-shaped object. GARCIA mentioned the "007" and "clover" stamped on the white brick-shaped object, and stated the quality was the same as

---

[6] Subject Vehicle 2 is a silver Ford Escape bearing Illinois registration DS75273 and registered to Individual D in Chicago, Illinois 60629.

purchased before and that GARCIA had tried it himself. GARCIA ultimately exited UC-2's vehicle and returned to Subject Vehicle 2.

32. Following the meeting, UC-2 met with HSI investigators at a pre-determined location and inspected the package provided by GARCIA. Investigators located a substance wrapped in vacuum seal plastic that appeared to have a small chunk removed from the side. According to the DHS Laboratory, the substance tested positive for cocaine with a net weight of approximately 1000.27 grams.

33. Following the transaction, law enforcement followed Subject Vehicle 2 back to the McLean Avenue Address, where GARCIA exited Subject Vehicle 2 and entered the residence. After several minutes, law enforcement observed GARCIA leave the residence and drive away in Subject Vehicle 2.

## CONCLUSION

34.     Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about March 18, 2026, in Forest Park, Illinois, GARCIA distributed a controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

Digitally signed by Antonio Vazquez
Date: 2026.06.25 12:40:25 -05'00'

ANTONIO VAZQUEZ
Task Force Officer
Homeland Security Investigations

Sworn to and affirmed by telephone on June 25, 2026

HON. GABRIEL A. FUENTES
UNITED STATES MAGISTRATE JUDGE

10